# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARK R.,[1]

      **Plaintiff,**

                                  **Case No. 2:22-cv-0379**

      v.                               **Magistrate Judge Norah McCann King**

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Mark R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On January 18, 2019, Plaintiff filed his application for benefits, alleging that he has been disabled since July 15, 2015. R. 125, 134, 339–45.[3] The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff was previously awarded Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* R. 37 (noting that Plaintiff had been awarded benefits in

upon reconsideration. R. 168–72, 177–79. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 180–81. ALJ Jack Russak held a hearing on February 28, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 54–91. In a decision dated May 4, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2015, Plaintiff's alleged disability onset date, through December 31, 2016, the date on which Plaintiff was last insured for benefits. R. 145–52 ("the 2020 decision"). On January 21, 2021, the Appeals Council granted Plaintiff's request to review, vacated the 2020 decision, and remanded the matter for further proceedings. R. 137–39. The Appeals Council specifically found as follows:

> The finding that the claimant can return to past relevant work is not supported. The Administrative Law Judge found that though the claimant had the residual functional capacity to perform an eroded range of medium work except, he is limited, in pertinent part, to frequent crouching; never crawling; and can never be exposed to unprotected heights (Finding 5). Based on this residual functional capacity and a vocational expert, the Administrative Law Judge found that the claimant could perform his past relevant work as a Carpenter as actually and generally performed.

> In finding that the claimant can perform his past relevant work as actually performed the Administrative Law Judge relied on the claimant's Work History Report (Decision, page 8 citing Exhibit 4E); however, the claimant indicated on this report that all his jobs required 8 hours of climbing and 8 hours of crawling. As such, they are precluded from being actually performed in light of the residual functional capacity. The Appeals Council notes that the claimant indicated in subsequent the Disability Reports (Exhibits 8E and 10E), that the job required only 1 hour of crawling; however, this would still be precluded by the residual functional capacity.

> As to the claimant returning to this work as generally performed, there is an unresolved conflict between the vocational evidence and the Dictionary of Occupational Titles (DOT). The vocational expert testified at the hearing that their testimony was consistent with the DOT, and if the DOT was silent, it was based on their experience and education (Hearing Recording at 11:12:44). Here, the residual

August 15, 2017), 103 (finding Plaintiff disabled as of August 15, 2017), 145 n.1 (noting that Plaintiff's "record establishes disability as of August 2017 after undergoing an amputation of a lower extremity that affected the claimant's ability to ambulate effectively").

2

functional capacity limits the claimant to no exposure to unprotected heights (Finding 5), while the DOT notes that the job includes occasionally working in high exposed places, and as such, is not silent to the issue. When there is a conflict between the vocational evidence and the DOT, the adjudicator must provide a reasonable explanation for the conflict in the determination or decision (Social Security Ruling 00-4p). Here, neither the vocational expert or Administrative Law Judge identified this conflict or provided a reasonable explanation for the conflict.

Remand is required.

R. 137–38. The Appeals Council instructed the ALJ on remand to

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's ability to perform his past relevant work, or if necessary, upon his occupational base (Social Security Rulings 83-12, 83-14, 85-15 and 96-9p), and to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. 138.

On remand, the ALJ held a hearing on April 23, 2021, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 12–33. In a decision dated May 17, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2015, Plaintiff's alleged disability onset date, through

3

December 31, 2016, the date on which Plaintiff was last insured for benefits. R. 37–47 ("the 2021 decision"). That decision became final when the Appeals Council declined review on November 29, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 13, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[4] On that same date, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   THE 2021 DECISION AND APPELLATE ISSUES

Plaintiff was 55 years old on December 31, 2016, the date on which he was last insured for benefits. R. 40, 45. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 15, 2015, his alleged disability onset date, and the date of the decision. R. 40.[5]

---

[5] The ALJ also specifically noted that Plaintiff had been awarded SSI benefits in August 15, 2017, in light of a subsequent medical condition, and noted further that the relevant period for

At step two, the ALJ found that Plaintiff's diabetes mellitus, high blood pressure, amputation of the fourth and fifth fingers of the right upper extremity, and hyponatremia were severe impairments. *Id*. The ALJ also found that bilateral shoulder pain, alcohol abuse, and generalized anxiety disorder were not severe impairments. R. 40–41.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 41–42.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 42–45. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a construction worker. R. 45.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a hand packager, a dining room attendant, and a cook helper—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 45–46. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 15, 2015, his alleged disability onset date, through December 31, 2016, the date on which he was last insured. R. 46–47.

Plaintiff disagrees with the ALJ's findings at step four and challenges the constitutionality of the appointment of the Commissioner; he asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Opening Brief,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient

---

this decision was July 15, 2015, Plaintiff's alleged disability onset date, and the date on which he was awarded SSI benefits. R. 37.

explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On December 14, 2017, Isabella Rampello, M.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency. R. 92–107. Dr. Rampello expressly stated that "THE PHYSICAL MER [medical evidence of record] *FOR THE PERIOD PRIOR TO THE DLI* [date last insured] *IS FOUND INSUFFICIENT TO FULLY ASSESS SEVERITY OF THE CONDITION AND IMPACT ON FUNCTION.*" R. 98 (emphasis added); *see also* R. 95 ("CLMT COULD NOT PROVIDE ANY ADDITIONAL MED SOURCES FOR DLI IN THE PAST OF 12/31/16"), 97 ("CLAIM PRIOR TO DLI IS RATED SEPARATELY FINDINGS OF INSUFFICIENT EVIDENCE FOR DLI IN PAST OF 12/31/16 IS INSUFFICIENT" and "INSUFFICIENT MER PRIOR TO DLI"). Dr. Rampello therefore provided a "Current Evaluation" of Plaintiff's physical RFC. R. 99. Specifically, Dr. Rampello opined, *inter alia*, that Plaintiff could occasionally (*i.e.,* up to one-third of an 8-hour day) lift and/or carry 20 pounds; frequently (*i.e.*, more than one-third up to two-thirds of an 8-hour day) lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of two hours; and sit (with normal breaks) for a total of about six hours in an 8-hour workday. R. 99. Dr. Rampello further opined that Plaintiff could, *inter alia*, occasionally climb ramps/stairs, balance, stoop, and crouch, but could never climb ladders/ropes/scaffolds or crawl and must avoid all exposure to hazards. R. 100–01. Dr. Rampello provided the following explanation of her findings:

> 56 YO MAN WITH H/O PVD AND DM; RT BKA FOR NECROTIZING FASCIITIS; LT FOOT ULCER STAGE 3; S/P GUILLOTINE RT BKA ON 6/28/17 FOR NECR[OTIZING] FASCIITIS AND BACTEREMIA
>
> MRI BRAIN MULT LACUNAR INFARCT ALONG THE CORONA RADIATA AND EXTENSIVE MICROANGIOPATHIC WHITE MATTER

> CURRENTLY 10/2017 USING A W/CRT AKA; BALANCE UNSTEADY
>
> THIS CLAIMANT IS CURRENTLY RECOVERING FROM RT LE[G] AMPUTATION WITH COMPLICATION OF LT HEEL ULCER; IN THE CONTEXT OF DM-2
>
> THE CLMT IS CURRENTLY INPT FOR REHAB GOING TO NEED TO REQUIRE A PERIOD OF INTENSIVE PHYSICAL THERAPY AND THEN PROSTHETIC TRAINING--BUT THE MOST AT MAXIMUM IMPROVEMENT THE CLAIMANT WOULD RETAIN IN MY CLINICAL JUDGEMENT WOULD BE NO MORE THAN THE FOLLOWING PRFC: L/C 20# OCC AND 10# FREQ S/W 2 HRS; SIT 6 HRS AVOIDING ALL EXP TO HEIGHTS
>
> T2 *CLAIM PRIOR TO DLI IS RATED SEPARATELY*

R. 101 (emphasis added). According to Dr. Rampello, Plaintiff could not perform his past relevant work and had a maximum physical RFC for sedentary work; she opined that Vocational Rule 201.06 (advanced age) directed a finding of "disabled". R. 102–03. *See* 20 C.F.R. Pt. 404, Subt. P, Appx. 2. Dr. Rampello set both the alleged disability onset date and the established disability onset date at August 15, 2017. R. 103.

The ALJ found Dr. Rampello's opinion to be "unpersuasive":

> The state agency consultant opined the claimant was limited to light [sic] work with postural and environmental limitations. The undersigned finds this opinion to be unpersuasive as it is inconsistent with the record, prior to the claimant's hospitalization in November 2016, there is no evidence to suggest the claimant's impairments limited [sic] to light [sic] work.

R. 44 (citation to record omitted).

## V.     DISCUSSION

### A.     RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination for a number of reasons. *Plaintiff's Opening Brief*, ECF No. 15, pp. 9–15; *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–4. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of medium work. R. 42.[6] In making this determination, the ALJ

---

[6] Although not mentioned by the parties, the Court notes that the ALJ's decision refers to an RFC for medium work, but appears to contemplate additional restrictions. R. 42 ("[T]he undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except:"). However, the transcript of the administrative hearing reflects that the ALJ presented a hypothetical question to the vocational expert with the following additional limitations: "push or pull upper extremities, bilateral, occasional. Foot control operations bilateral is never. Occasionally climb ramps and stairs. Never climb ladders, ropes, or scaffolds. Occasional stoop, occasional crouch, occasional kneel, but never crawl. No exposure to heavy industrial moving machinery or unprotected heights." R. 28–29. The vocational expert testified that the medium exertional jobs of hand packager, dining room attendant, and cook helper would be available to an individual with that RFC and Plaintiff's vocational profile. R. 29–30. Because the ALJ referred in his written decision to these three jobs at step five of the sequential evaluation, R. 46, thus apparently

considered medical evidence including, *inter alia*, evidence that, despite amputations of the

fourth and fifth fingers of his right hand and mild high blood pressure, Plaintiff demonstrated

otherwise normal results with normal respiratory functioning, no evidence of edema, full range

of motion, intact reflexes, and intact neurological sensation; evidence that, despite diagnoses of

diabetes mellitus and hypertension in March 2015, follow up physical examinations reflected

normal results and, during treatment, Plaintiff's diabetes was noted to be stable with insulin and

there were "no findings regarding Plaintiff's absolute loss of balance." R. 43. The ALJ also

specifically considered Plaintiff's hyponatremia[7] as follows:

> . . . In August 2016, the claimant was diagnosed with hyponatremia, which caused
> the claimant some dizziness. (2F/27). However, the claimant's physical
> examinations continued to show normal results. The claimant still showed normal
> ranges of motion, muscle strength, neurological sensation, and reflexes. There were
> no abnormalities with cardiac or respiratory functioning either. (2F/24, 27).
> Likewise, lab tests also showed that his sodium and magnesium were returning to
> normal levels. (2F/23). In November 2016, the claimant was admitted to the
> hospital due to hyponatremia. Treatment records note the claimant [w]as dialyzed
> in the intensive care unit. He was noted to have a sodium level of 124. Further, the
> treatment provider noted the claimant's hyponatremia condition was likely due to
> a combination of low solute intake chronically as well as sulfonylurea-induced,
> SIADH-induced euvolemic hyponatremia. (1F). Following treatment at the
> hospital, the claimant engaged a rehabilitation facility. (10F). *Treatment records*
> *during that time show steady improvement in the claimant's activities of daily*
> *living. Further, the claimant was noted to be progressing with skilled intervention.*

reflecting his intention to include these limitations in the RFC, and because Plaintiff does not
raise this issue as error, the Court finds that the ALJ's failure to identify these additional RFC
restrictions in the body of the written decision was a careless error that is harmless. *See Armata*
*v. Berryhill*, No. 3:17-CV-30054-KAR, 2018 WL 4829180, at *12 (D. Mass. Oct. 4, 2018) ("'In
nearly all of the Social Security cases in which a court has concluded that an ALJ made a mere
typographical or scrivener's error, the ALJ's intent was more apparent.'") (quoting *Douglas v.*
*Astrue*, C/A No. 1:09-1349-CMC-SVH, 2010 WL 3522298, at *3 (D.S.C. Sept. 3, 2010)); *Hudon*
*v. Astrue*, Civil No. 10-cv-405-JL, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011) ("A
scrivener's error is a transcription error or a typographical error. . . . In the context of social
security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the
ALJ's intent was apparent.") (citations omitted).

[7] "Hyponatremia is 'a condition that occurs when the level of sodium in your blood is
abnormally low.'" *Marshall v. Astrue*, No. 4:10-CV-1978, 2011 WL 5862625, at *8 (M.D. Pa.
Nov. 22, 2011) (citations omitted).

> *However, the claimant was noted to continue to require treatment with mobility due to impaired balance and coordination.* (Id.) The record also indicates that in November 2016, the claimant noted dizziness and radiating pain in the bilateral lower extremities. (2F/19). Treatment records noted that the dizziness could have been due to the claimant's history of hyponatremia. (2F/24). While the claimant testified that he was using a cane or a walker during this period. However, the record is *devoid of any reference of a medical necessity for a walke*r. (Hearing Testimony).

*Id*. (emphasis added) In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, raises a number of challenges to the ALJ's determination in this regard. For example, Plaintiff argues that the ALJ failed to examine all of Plaintiff's treatment records through the date on which he was last insured and misstated "the status of medical necessity of an assistive device." *Plaintiff's Opening Brief*, ECF No. 15, pp. 10–13; *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–4. Plaintiff specifically complains that the ALJ erred in failing to address Plaintiff's RFC for the period from November 2016 through December 31, 2016, the date on which he was last insured, but instead stated only that "'prior to the claimant's hospitalization in November 2016, there is no evidence to suggest the claimant's impairments limited him to light work.'" *Plaintiff's Opening Brief*, ECF No. 15, pp. 10–11 (quoting R. 44). Plaintiff also contends that the ALJ "misconstrues" the record evidence when finding that Plaintiff made steady improvement and was progressing: "[These gains] only amounted to an ability to ambulate with a recommended rollator, without an assistive device but with a contact guard assistance for short distances, or with the Plaintiff's preferred use of a cane." *Plaintiff's Opening Brief*, ECF No. 15, p. 12 (citing R. 1834–35, 1848, 1852, 1872). Plaintiff further insists that the evidence reflects that Plaintiff "was still requiring the use of a cane at the end of 2016, which is still inconsistent with an ability to perform medium exertional employment." *Plaintiff's*

*Reply Brief*, ECF No. 18, pp. 2–3 (citations omitted); *see also Plaintiff's Opening Brief*, ECF No. 15, p. 12. Plaintiff goes on to complain that "[t]he ALJ offers no explanation for why the State Agency's RFC finding does not relate back to the November 2016 hospitalization." *Plaintiff's Opening Brief*, ECF No. 15, p. 11.

The Court is not persuaded that these issues require remand. As a preliminary matter, it is true that, when crafting the RFC and discounting the opinion of Dr. Rampello, the ALJ stated that "prior to the claimant's hospitalization in November 2016, there is no evidence to suggest the claimant's impairments limited him to light work." R. 44. However, the Court agrees with the Commissioner that this statement by the ALJ does not establish that the ALJ failed to consider or excluded evidence relating to the period between November 2016 and the date on which Plaintiff was last insured. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, pp. 11–12. Indeed, the ALJ expressly confirmed that he had evaluated Plaintiff's RFC for the entire relevant period, stating that he found "*through the date last insured*, the claimant had the residual functional capacity to perform medium work[.]" R. 42 (emphasis added). The ALJ also expressly considered, when crafting the RFC, evidence from late December 2016 following Plaintiff's treatment at the hospital. R. 43 (citing, *inter alia*, Exhibit 10F, R. 1826–95 (reflecting hospital records dated February 7, 2016, through December 27, 2016). Accordingly, it appears that the ALJ properly considered the entire relevant period.

The Court is also not persuaded that the ALJ's consideration of the record, including Plaintiff's use of an assistive device, requires remand. "[An] ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). SSR 96-9p addresses the need to find that such a device is "medically required":

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)*. The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (emphasis added). "A claimant's testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL 2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. Nov. 25, 2002) ("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). "However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device." *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023) (quoting *Steward v. Comm'r of Soc. Sec.*, No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)). "[T]he failure to do so may require a remand." *Id*. (citations omitted).

In the present case, the ALJ expressly noted that, following Plaintiff's hospitalization in November 2016, Plaintiff "continue[d] to require treatment with mobility due to impaired balance and coordination" as well as Plaintiff's testimony that he "was using a cane or a walker

16

during this period." R. 43. The ALJ nevertheless concluded that "the record is devoid of any reference of a medical necessity for a walker[.]" *Id*. Plaintiff points to medical records reflecting his use of an assistive device. *Plaintiff's Opening Brief*, ECF No. 15, p. 12 (arguing that Plaintiff's gains "still only amounted to an ability to ambulate with a *recommended* rollator, without an assistive device but with a contact guard assistance for short distances, or with the Plaintiff's *preferred use of a cane*") (emphasis added) (citing R. 1834–35, 1848, 1852, 1872); *see also* R. 1872 (reflecting that Plaintiff "also refused social worker securing a rollator walker *as suggested by rehab*, stating that he has a cane and he will be alright") (emphasis added). However, this evidence is insufficient to establish the medical necessity required by SSR 96-9P. Based on this record, the Court cannot say that the ALJ erred in finding that a walker was not medically necessary.

Plaintiff also argues that the ALJ misconstrued the evidence when the ALJ stated that Plaintiff showed steady improvement and was progressing; according to Plaintiff, such evidence does not establish that Plaintiff could perform medium exertional work. *Plaintiff's Opening Brief*, ECF No. 15, pp. 10–11; *Plaintiff's Reply Brief*, ECF No. 18, pp. 2–4. The Court is not persuaded that this issue requires remand. As a preliminary matter, a fair reading of the record reflects that the ALJ did not misstate the evidence when he found that treatment records following Plaintiff's release from the hospital "show steady improvement in the claimant's *activities of daily living*." R. 43 (emphasis added); *see also*, *e.g.*, R. 1842 ("Pt is able to participate in in [sic] all ADLs with cga with increase time for task completion"), 1844 (same), 1846 (same), 1848 (same), 1850 (same), 1852 (same). Notably, this evidence was but one factor considered by the ALJ in crafting Plaintiff's RFC. R. 42–44. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion,

17

as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497

F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986));

*see also Chandler,* 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose

their own factual determinations [under the substantial evidence standard].").

To the extent that Plaintiff complains that "[t]he ALJ offers no explanation for why the

State Agency's RFC finding does not relate back to the November 2016 hospitalization[,]"

*Plaintiff's Opening Brief*, ECF No. 15, p. 11, this argument is unavailing. As previously detailed,

Dr. Rampello specifically stated more than once that there was insufficient record evidence prior

to the date on which Plaintiff was last insured to formulate a physical RFC for that period. R. 97–

98, 101.

Plaintiff also points to misstatements and/or internal contradictions in the ALJ's written

decision. *Plaintiff's Opening Brief*, ECF No. 15, pp. 10, 15. Plaintiff specifically notes that the

ALJ misstated Dr. Rampello's RFC as one for light exertional work instead of sedentary work

and argues that the ALJ contradicted himself at step four when he first stated that Plaintiff had

the RFC for medium exertional work, but later stated that Plaintiff could not perform his past

relevant work because he had a RFC for light exertional work. *Id*. (citing R. 42, 44, 45 (noting

that Plaintiff's past relevant work was described as heavy but was performed at the medium

level, and concluding that "[t]he claimant's current residual functional capacity limits him to

*light* work. Hence, the exertional level of the claimant's past work exceeds his current residual

functional capacity") (emphasis added), 102). Although sloppy, these careless mistakes on the

part of the ALJ amount to nothing more than harmless typographical errors. *See Armata*, 2018

WL 4829180, at *12; *Hudon*, 2011 WL 4382145, at *4. Even granting that the ALJ erred in

characterizing Dr. Rampello's RFC finding as light instead of sedentary, R. 44, 102, Plaintiff has

not pointed to any prejudice redounding to him as a result of this error. This is particularly true because, as previously discussed, Dr. Rampello stated that there was insufficient record evidence relating to the period prior to the date on which Plaintiff was last insured to assess the severity and impact of Plaintiff's impairments. R. 97–98. As for the ALJ's error in stating that Plaintiff's RFC limits him to light work when finding that Plaintiff was unable to perform his past relevant work, R. 45, it is clear from a full and fair reading of the opinion that this was simply another scrivener's error. Notably, the ALJ stated at the onset of step four that, "through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)[.]" R. 42. Moreover and as noted in more detail above, it is clear from the transcript and from the ALJ's hypothetical posed to the vocational expert that the ALJ intended to limit Plaintiff to a limited range of medium work. R. 28–30; *see also* R. 45–46 (adopting three medium exertional jobs identified by the vocational expert). Based on this record, the Court cannot conclude that the ALJ's careless errors in this regard warrant remand. *See Armata*, 2018 WL 4829180, at \*12; *Hudon*, 2011 WL 4382145, at \*4; *Mims v. Berryhill*, No. CV 18-9286, 2019 WL 1326892, at \*5 (D.N.J. Mar. 25, 2019) (affirming ALJ's decision where the Court found "that the ALJ's later written statement stating [that the plaintiff] could only sit for two hours in a day was merely a scrivener's error. It is apparent that the error was merely a typographical error").

In his final challenge to the RFC determination, Plaintiff contends that the ALJ "failed to analyze the Plaintiff's conditions through the lens of SSR 18-1p." *Plaintiff's Opening Brief*, ECF No. 15, pp. 13–15. Plaintiff's argument is not well taken. SSR 18-01p governs the determination of onset dates in disability claims. SSR 18-01p, 2018 WL 4945639, Determining the Established Onset Date (EOD) in Disability Claims (Oct. 2, 2018). However, the ALJ in this case did not

find that Plaintiff was disabled. R. 46–47. Therefore, "SSR 18-1p does not apply because an

established onset date must be determined only if the ALJ finds that the claimant met the

statutory definition of disability." *Cyree v. Kijakazi*, No. 22-35462, 2023 WL 3862512, at *1 (9th

Cir. June 7, 2023) (citing SSR 18-01p, 2018 WL 4945639, at *2 (Oct. 2, 2018)); *see also Anton*

*v. Comm'r of Soc. Sec.*, No. 5:23-CV-00391-CEH, 2024 WL 449534, at *13 (N.D. Ohio Feb. 6,

2024) ("The Sixth Circuit has observed that where 'there was no finding that the claimant is

disabled . . ., no inquiry into onset date is required.' Because the ALJ did not find Claimant to be

disabled, SSR 18-01p does not apply.") (quoting *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.

1997)).

      In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record.

      **B.**     **Constitutionality of Appointment of Former Commissioner Andrew Saul**

      Plaintiff also challenges the constitutionality of the appointment of former Commissioner

Andrew Saul, arguing that his appointment violated the Constitutional separation of powers.

*Plaintiff's Opening Brief*, ECF No. 15, pp. 16−19; *Plaintiff's Reply Brief*, ECF No. 18, pp. 4−14.

This Court has previously rejected similar arguments, reasoning as follows:

> The Plaintiff alleges that the Social Security proceedings in their entirety were
> constitutionally defective because of the appointment of Andrew Saul as
> Commissioner of the Social Security Administration. (ECF 10 at 31). The parties
> agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the
> extent that it is construed as limiting the President's authority to remove the
> Commissioner without cause. (ECF 15 at 36). Plaintiff argues that because of this
> violation, the appointed ALJ and the Appeals Council did not have constitutional
> authority to render a decision on Plaintiff's case. (ECF 10 at 32).
>
> While Plaintiff argues to the contrary, the Supreme Court has already stated that
> there is no basis to conclude that an appropriately appointed official does not have
> the authority to carry out the functions of the office, even if his or her position was

designed by Congress to impermissibly impinge on the President's right to removal at will. *Collins v. Yellen*, —— U.S. ——, 141 S. Ct. 1761, 1787-88, 1788 n.23, 210 L.Ed.2d 432 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").

> The Appointment Clause cases do not help the shareholders either. These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer.... Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed." There is thus no barrier to them exercising power in the first instance.

*Id*. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing. *Id*. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar. *See id*. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged."). So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id*. at 1789 (Thomas, J. concurring). Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." *Id.* at 1802 (Kagan, J. concurring). *See also Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review. Without standing, there is no "case or controversy" to be decided. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits. (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act. *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *10, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision. As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing. *See Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *——, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022) ("Justice Alito specified in Collins that Seila Law's holding on standing 'does not mean that actions taken by such an officer are void ab initio and must be undone.' ... [I]t is not difficult to see that Collins requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3)."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case). As a result, the requisite nexus is not met, and the Court denies Plaintiff's appeal on this ground."); *see also Ford v. Kijakazi*, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (denying separation of powers claim because plaintiff failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in *Collins*, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." *Collins*, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. Id. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has undermined and politicized
> Social Security disability benefits, terminated the agency's telework policy

> that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

> *Id.*

> First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 141 S. Ct. at 1779 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Kwasnik v. Kijakazi*, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

> Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record. *See Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569 at *13, 2022 U.S. Dist. LEXIS 114766 at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted). The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.

*John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12 (D.N.J. Aug. 25, 2022). This decision is consistent with this Court's decisions in other cases that considered similar challenges to the constitutionality of the appointment of the Commissioner. *See Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11 (D.N.J. Aug. 9, 2022) (same); *Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022 WL 3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff

23

benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.")). Nothing in Plaintiff's briefing in the instant case persuades this Court that the reasoning in these cases was erroneous. The Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  February 26, 2024          _s/Norah McCann King_

                                            NORAH McCANN KING
                                UNITED STATES MAGISTRATE JUDGE